122 F.3d 427
 UNITED STATES of America, Plaintiff-Appellee,
v.
Christopher R. MESSINO and Clement Messino, Defendants,
Appeals of: Estate of Biagio Messino, Joseph Messino, and
Ted Borowski, Claimants-Appellants.
 Nos. 96-1718, 96-1719, and 96-2167.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 28, 1997.
Decided Aug. 20, 1997.
 
 Barry Rand Elden, Chief of Appeals, Matthew M. Schneider (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff-Appellee.
 John L. Sullivan (argued), Magidson & Sullivan, Chicago. IL. for Estate of Biagio Messino and Joseph Messino.
 Marc W. Martin, Chicago, IL, for Christopher R. Messino.
 Joseph P. Storto, Storto, Kalal & Finn, Bensenville, IL, E.E. Edwards, III (argued), Edwards & Simmons, Nashville, TN, for Ted Borowski.
 Before CUDAHY, ESCHBACH, and FLAUM, Circuit Judges.
 ESCHBACH, Circuit Judge.
 
 
 1
 Under 21 U.S.C. § 853(a), the government is entitled to forfeiture of assets constituting or derived from proceeds of certain illegal drug transactions. Forfeiture under this section of the United States Code is known as criminal forfeiture because the government must first convict a defendant of a drug crime and then prove by a preponderance of the evidence that the property--which had to be identified in the criminal indictment, Fed.R.Crim.P. 7(c)(2)--either constitutes or was purchased with proceeds from the crime. See United States v. Simone, 931 F.2d 1186, 1199 (7th Cir.1991). If a jury finds that property is forfeitable as drug proceeds under 21 U.S.C. § 853(a), the court will enter a preliminary order of forfeiture. Third parties who have claims to property which the government seeks to have criminally forfeited cannot intervene in the criminal action against the defendant. 21 U.S.C. § 853(k). Instead, they must wait until the court has entered a forfeiture order based on a criminal conviction, and then petition the court under 21 U.S.C. § 853(n) for a hearing to adjudicate their interest in the property. To succeed, third parties must prove by a preponderance of the evidence either that they had superior title to the property at the time of the crime or that they are bona fide purchasers of the property. 21 U.S.C. § 853(n)(6). If third parties make such proof, the court will amend the preliminary order of forfeiture it entered following the jury finding of forfeitability. Id. Once the third-party hearings have been held, or the time for filing third-party claims has passed, the government has clear title to the property forfeited. 21 U.S.C. § 853(n)(7).
 
 
 2
 On April 26, 1995, Christopher Richard ("Dick") Messino and Clement Messino (along with Paul Messino and Christopher B. Messino) were convicted by a jury of several crimes including conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Based on this conviction, the government sought criminal forfeiture against the Messinos and successfully proved to the jury that a number of assets either constituted or were derived from the proceeds of the Messinos' drug operations. Relevant to this case, the jury found the following items forfeitable as proceeds: a Pro-Mod 1957 race car known as the "Shake Rattle and Run," a 1987 pickup truck, real property located at 17027 South Forest, Oak Forest, Illinois (the "Forest property"), and a 1963 Corvette.[1] The court subsequently entered preliminary orders of forfeiture with regard to these items of property. Also relevant to this appeal, the jury found that a 1991 Harley Davidson motorcycle sought by the government was not forfeitable as drug proceeds.
 
 
 3
 In addition to specific items of property, the government argued to the jury that $630,000 in currency was forfeitable as proceeds of Clement Messino's drug activities. The jury agreed that Clement obtained cash proceeds, but found only $315,000 to be forfeitable as such. When the government moved for an order of forfeiture, however, it claimed that it could not locate this cash and thus the court should order the forfeiture of other property as a substitute for the $315,000 in currency under 21 U.S.C. § 853(p). Section 853(p) of the criminal forfeiture statute provides that in five specified circumstances the government may obtain forfeiture of a "substitute" asset to take the original asset's place, for example, when an asset ordered forfeited cannot be located upon the exercise of due diligence.[2] 21 U.S.C. § 853(p)(1). Based on this provision, the court granted the government's motion and entered a preliminary order of forfeiture of several pieces of property as substitute assets, the only one relevant to this case being the 1991 Harley Davidson motorcycle which the jury had found was not criminally forfeitable as drug proceeds.
 
 
 4
 Three people waited in the wings during the criminal trial: Ted Borowski, Joseph Messino, and Biagio Messino,[3] who all claim an interest in the property discussed above. Their claims form the subject of this appeal. As mentioned, however, it was not until the preliminary orders of forfeiture were entered, based on the convictions of Dick and Clement Messino and the jury findings of forfeitability, that they could assert their claims under 21 U.S.C. § 853. Once the court entered these preliminary forfeiture orders, the three appellants filed petitions with the court under § 853(n) asserting their interests in the above property. Ted Borowski claimed a 100 percent interest in the "Shake Rattle and Run" race car, or in the alternative, that he owned certain car components which he allegedly paid for and built himself. Biagio Messino claimed a 25.37 percent interest in the 1987 pickup truck and a 9.76 percent interest in the Forest property. Finally, Joseph Messino claimed a 19.15 percent interest in the Corvette and asserted that he owned the Harley Davidson. After holding hearings on the third-party interests pursuant to § 853(n), the district court rejected all of these claims and Borowski, Biagio, and Joseph appealed to this court.
 
 
 5
 All three challenge the district court's fact finding.[4] In addition to claiming that the findings were so obviously incorrect as to be clearly erroneous, Biagio and Joseph challenged the judge's fact-finding method. The district judge for the § 853(n) hearings also presided over the criminal trial. As required by the statute, the judge considered evidence both from the criminal trial and the § 853(n) hearings when making his findings on the third-party claims. 21 U.S.C. § 853(n)(5). Although the judge was the fact finder at the § 853(n) proceedings, he stated he was unable to assess the credibility of the witnesses at the criminal trial because the jury, not he, was the fact finder there. Joseph and Biagio say this was a mistake, made worse by the fact that the judge then erroneously inferred from the jury's verdicts that certain witnesses were credible (usually the government's) and other witnesses were not credible (usually the defendants').
 
 
 6
 Joseph Messino also raises an interesting challenge to the forfeiture of the motorcycle as a substitute asset. The district court found that Joseph failed to prove by a preponderance of the evidence that he owned the motorcycle and instead held that the method of purchase was typical of the way one launders money. Joseph claims it was error for the court to put the burden on him to prove ownership, as statutorily required in third-party hearings, because it did not properly issue the order of forfeiture in the first place. According to Joseph, before the court may order forfeiture, and thus shift the burden of proof to third parties to defeat the forfeiture, the government must prove by a preponderance of the evidence that the claimed item is forfeitable in the first instance. In the case of substitute property, this would mean that the government must prove that one of the five prerequisites for seeking substitute property is met. Joseph focuses elsewhere, however, and claims that the government also must prove that the claimed property is "property of the defendant." 21 U.S.C. § 853(p). In the instant case, the government apparently did not present any evidence with its motion for forfeiture of substitute assets either that one of the five circumstances for seeking substitute assets was met or that the property sought was Clement's property. The government potentially could have cited to evidence presented in the criminal trial to support its motion, but it did not. Nor did the court make an explicit finding that Clement was the owner of the motorcycle. Joseph presents a strong argument that, because the district court did not require the government to present evidence that the motorcycle was forfeitable as a substitute asset under § 853(p), the original order of forfeiture is invalid and the burden of proof should never have shifted to Joseph.
 
 
 7
 Last, Borowski raises the challenging question of whether the Seventh Amendment requires a jury in § 853(n) proceedings on third-party claims.[5] We have found no published opinion addressing this issue, although there are some unpublished opinions outside of our circuit. United States v. Henry, 64 F.3d 664 (6th Cir.1995) (unpublished table decision) (rejecting Seventh Amendment argument), cert. denied, --- U.S. ----, 116 S.Ct. 1020, 134 L.Ed.2d 99 (1996); United States v. Duboc, No. GCR 94-01009 (N.D.Fla. May 9, 1996) (unpublished order) (same). The Seventh Amendment only preserves the right to a jury where it was granted at common law at the time of its enactment in 1791. United States v. One 1976 Mercedes Benz 280S, 618 F.2d 453, 456 (7th Cir.1980). In cases of statutorily created rights, we must search for the most analogous action and remedy of the eighteenth century and determine whether it was tried in the English courts with or without a jury. Tull v. United States, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). Borowski argues that § 853(n) proceedings are forfeiture actions which should be treated no differently from in rem (civil) forfeiture, to which we have already found that the Seventh Amendment applies. One 1976 Mercedes Benz 280S, 618 F.2d 453. In response, the government makes a number of alternative arguments. First, the government argues that this is an action by the claimants against the United States, and because historically there was no right to a jury in suits against the sovereign, there being no right to sue the sovereign at all, Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981), the Seventh Amendment does not guarantee a jury here. If one looks at this as an action by the United States, the government says, then there is still no jury right because it is an action to enforce "public rights" which Congress is entitled to assign to a special court without a jury. See, e.g., Granfinanciera v. Nordberg, 492 U.S. 33, 51, 109 S.Ct. 2782, 2795, 106 L.Ed.2d 26 (1989) ("Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders."). If we disagree with this analysis, the government asserts that the most apt analogy for this action is not in rem forfeiture, but the equitable action to quiet title and thus, again, the Seventh Amendment does not apply because there were no juries in actions in equity.
 
 
 8
 After coming so far, the reader must be impatient for a resolution of these thought-provoking issues. Unfortunately, we cannot satisfy. We must confess that we presented the above discussion only to flag these tricky questions which are likely to rise again. We lost the opportunity to treat any of these interesting matters when we reversed the underlying convictions of Clement and Dick Messino in United States v. Underwood, et al., 122 F.3d 389 (7th Cir.1997). As elaborated in that opinion, because the defendants' rights to the intelligent exercise of their peremptory strikes were impaired, we reversed the convictions of all the defendants convicted in that jury trial. Having reversed the convictions because of the improper jury selection, all of the jury's findings and all of the resulting criminal forfeiture orders also must fall. Thus, the necessary consequence of reversing the defendants' convictions was that we also vacated the criminal forfeiture orders based on those convictions. Under § 853(k) and (n), as discussed above, third parties cannot petition the court for an adjudication of their interests in property subject to criminal forfeiture until after preliminary orders of forfeiture have been entered. Because there are no forfeiture orders left for these third parties to challenge, the appeals of Biagio and Joseph Messino and Ted Borowski are DISMISSED.
 
 
 
 [1]
 The government sought, and the court ordered, forfeiture of only a one-half interest in the 1963 Corvette because it was the subject matter of an appeal pending in this court, United States v. Michelle's Lounge, No. 95-1411
 
 
 [2]
 Section 853(p) states:
 If any of the property described in subsection (a) of this section, as a result of any act or omission by the defendant--
 (1) cannot be located upon the exercise of due diligence;
 (2) has been transferred or sold to, or deposited with, a third party;
 (3) has been placed beyond the jurisdiction of the court;
 (4) has been substantially diminished in value; or
 (5) has been commingled with other property which cannot be divided without difficulty;
 the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).
 
 
 [3]
 Biagio died prior to the hearing on his claim. Thus, his claim and this appeal were brought by his estate. For the sake of simplicity, however, we will hereinafter refer to the claimant as Biagio or Biagio Messino
 
 
 [4]
 Joseph and Biagio also argued that the district judge should have recused himself from the third-party hearings and Borowski claimed that the forfeiture of the race car violated the Eighth Amendment
 
 
 [5]
 The Seventh Amendment states:
 In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.